UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| EDWARD DWAYNE ASHFORD, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 02-1955 (RMC) |
| DISTRICT OF COLUMBIA, *et al.*, | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

As previously established, Edward Ashford, a *pro se* plaintiff, is a former District of Columbia inmate who seeks to hold the District of Columbia and two employees of the D.C. Department of Corrections liable for injuries resulting from an attack on him by inmates at the United States Penitentiary in Beaumont, Texas ("USP Beaumont"), in 2001. *See Ashford v. District of Columbia*, 306 F. Supp.2d 8 (D.D.C. 2004) (Collyer, J.) (granting in part and denying in part defendants' motion to dismiss). On January 24, 2006, the remaining defendants, the District of Columbia and Patricia Britton, filed a motion for summary judgment, which Mr. Ashford opposes.[1] Upon careful consideration of the parties' submissions, and the entire record, the Court will grant the defendants' motion.

**I. BACKGROUND**

On October 21, 1985, Mr. Ashford was a pretrial detainee in the custody of the D.C. Department of Corrections. He was being held in protective custody in the D.C. Jail because his

---

[1] *See Ashford*, 306 F. Supp.2d at 10 n.1 (dismissing the claims against Donald Matthews without prejudice for inability to effect service of process).

father worked there as Officer-in-Charge of the SW-1 housing unit, which housed inmate Kelvin "Hollywood" Smith.  *See* Am. Compl. ¶¶ 4-6.  Mr. Ashford asserts that he was not kept separate from Mr. Smith and that he was attacked by Mr. Smith and other inmates on a "court bus" *en route* from D.C. Superior Court to the D.C. Jail.  *Id.* ¶ 5.  Mr. Smith later got into a "physical altercation" with Mr. Ashford's father and vowed to "get even."  *Id.* ¶ 6.  As a result, a second separation order was issued ("Separation Order") and made a permanent part of Mr. Ashford's file.  *Id.* ¶¶ 6-7.  The exact cause of the hostility between Messrs. Ashford and Smith is not stated in the amended complaint.

In August 1997, Mr. Ashford was transferred to the care of the BOP.  He eventually wound up at the United States Penitentiary in Terre Haute, Indiana, in 1998.  Apparently, Mr. Smith was also placed at that facility and was "attempting to rally other D.C. Offenders to attack plaintiff."  *Id.* ¶ 12.  Mr. Ashford claims to have notified his correctional counselor of this threat, but nothing happened.

On November 14, 2001, Mr. Ashford was transferred to USP Beaumont from the Federal Correctional Complex at Beaumont.  *Id.* ¶ 14.  Unbeknownst to Mr. Ashford, Mr. Smith was already at USP Beaumont.  *Id.*  On November 16, 2001, as Mr. Ashford exited the prison commissary, he was approached by D.C. inmates Kobi Mowatt and Mark Bundy, who allegedly attacked him with homemade knives after stating, "'[Y]our [*sic*] about to get paid, Hollywood [Smith's nickname] sent us.'"  *Id.* ¶ 15.  Mr. Ashford was stabbed 13 times, requiring a three-week hospitalization to recover from his injuries.  Some of his wounds appear to be permanent and may require additional medical treatment.  *Id.* ¶¶ 15, 16.

## II.  LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  This procedural device is not a "disfavored legal shortcut" but a reasoned and careful way to resolve cases fairly and expeditiously. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  In determining whether a genuine issue of material fact exists, the Court must view all facts and reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  To be "material" and "genuine," a factual dispute must be capable of affecting the substantive outcome of the case. *Anderson*, 477 U.S. at 247-48; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).

In considering whether there is a triable issue of fact, the Court must draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *see also Wash. Post Co. v. U.S. Dep't of Health and Human Servs.*, 865 F.2d 320, 325 (D.C. Cir. 1989).  The party opposing a motion for summary judgment, however, "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.  The non-moving party must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*, 475 U.S. at 586.  Moreover, "any factual assertions in the movant's affidavits will be accepted as being true unless [the opposing party] submits his own affidavits or other documentary evidence contradicting the assertion." *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir.1992) (quoting *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir.1982)).  "The plain language of Rule 56(c) mandates the entry of summary

judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

### III.  ANALYSIS

The amended complaint sets forth two causes of action:  (1) a claim under 42 U.S.C. § 1983 alleging violations of the Eighth and Fourteenth Amendments to the U.S. Constitution, and (2) a common law negligence claim.[2]

**A. The § 1983 Claim**

Mr. Ashford asserts that the District and its "Interstate Compacts Administrators," Ms. Britton and Mr. Matthews, had a duty to relay any information about threats to the personal safety of inmates who were transferred elsewhere to serve their sentences.[3] *See* Am. Compl. ¶ 17. He also contends that the failure of the D.C. Department of Corrections to notify receiving institutions that there was a permanent separation order in his file resulted from "a local Municipal custom, policy and practice . . . to effect the objectives of the District . . . to effect the transfers of

---

[2]  The defendants rightly assert that the Fourteenth Amendment is inapplicable to the District of Columbia. *See Bolling v. Sharpe*, 347 U.S. 497, 499 (1954).

[3]  According to Mr. Ashford, an "Interstate Compacts Administrator"

> was . . . responsible for the screening, selection, classification and custody determination of those inmates housed within the ambit of the D.C. Department of Corrections whom [*sic*] were to be transferred pursuant to contractual agreements, as well as the Interstate Corrections Compact provisions, to State, Private, and Federal Correctional entities for service of their District of Columbia sentences.

*Id.* ¶ 9.

inmates outside the ambit of the D.C. Department of Corrections" who otherwise would not have been accepted by a State prison system or the BOP. *Id.* ¶ 18. This "local custom, policy and practice" was allegedly "based on negligence and recklessness pursuant to an official policy of the District of Columbia." *Id.* ¶ 19.

The defendants contend, through the declaration of Shana L. Frost (Ex. 5), that Mr. Ashford's inmate file does not contain an order requiring his separation from Mr. Smith, nor does Mr. Smith's file contain such an order with respect to Mr. Ashford. Frost Decl. ¶¶ 3-4. In fact, neither inmate's file mentions the other inmate. *Id*. Mr. Ashford has produced two memoranda dated October 22, 1985, and October 23, 1985, that he claims are the separation orders instructing that he be separated from six and eleven other inmates, respectively, including Mr. Smith. Pl.'s Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Opp."), Exs. 2, 3. The defendants, through the declaration of Dennis Harrison (Ex. 6), challenge these exhibits as "fabricated and not issued by" the D.C. Department of Corrections. Harrison Decl. ¶ 4. Mr. Harrison questions the authenticity of the Oct. 23 memorandum, Pl.'s Ex. 2, in part because of the different typefaces used therein. *Id*. ¶ 5. He doubts that the commanding officer, Lieutenant Colonel Bernard L. Braxton, would have approved the document without having it "re-done to be correct in both substance and appearance." *Id*. ¶ 8. However, this particular memorandum was signed by someone other than Lieutenant Colonel Braxton; although the signature is illegible, it is clear it is signed by the "acting c/o." Pl's Ex. 2. The most significant point that raises a question of the documents' authenticity is the fact that "the 'separation order' offered by inmate Ashford was not found in any of the institutional files of the inmates to whom the order pertains." Harrison Decl. ¶ 6; *see* Frost Decl. ¶ 3. Mr. Ashford has not stated how he obtained the memoranda, which are neither originals nor certified

copies. A failure to present any evidence of their authentication in light of the defendants' challenge would render the documents inadmissible at trial. *See* Fed. R. Evid. 1003 ("A duplicate is admissible to the same extent as an original unless . . . a genuine question is raised as to the authenticity of the original . . . .").

However, the authenticity of these memoranda does not affect the legal analysis, and the Court will assume for present purposes that they are authentic. Mr. Ashford has presented no evidence from which a reasonable juror could hold the District of Columbia liable for the asserted constitutional violation. The Eighth Amendment protects prisoners from the "wanton and unnecessary infliction of pain" and conditions that are "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Mr. Ashford alleges that his assault at the Texas facility violated his Eighth Amendment right to be free of cruel and unusual punishment. His premise is that the District of Columbia's failure to relay the separation orders to the transferee facilities constituted deliberate indifference to a known safety risk, which resulted in his injuries. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (prison official may be held liable under § 1983 if he "knows of and disregards an excessive risk to inmate health or safety").

A municipality, such as the District of Columbia, may be held liable under § 1983 "only when the execution of its official policy or custom is responsible for the deprivation of constitutional rights." *Morgan v. District of Columbia*, 824 F.2d 1049, 1058 (D.C. Cir. 1987); *see Daskalea v. District of Columbia*, 227 F.3d 433, 441 (D.C. Cir. 2000). Courts "have consistently refused to hold municipalities liable under a theory of *respondeat superior*." *Board of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 403-04 (1997); *Triplett v. District of*

*Columbia*, 108 F.3d 1450, 1453 (D.C. Cir. 1997) ("Although *Monell* [*v. Department of Social Services of the City of New York*, 436 U.S. 658, 691 (1978)] allows claims based upon a well-settled municipal custom, plaintiff must show fault on the part of the city based on a course its policymakers consciously chose to pursue.") (citations and internal quotation marks omitted).  Nor may municipalities be held liable under § 1983 for its employees' or agents' vicarious acts. *Graham v. Davis*, 880 F.2d 1414, 1421 (D.C. Cir. 1989).  Thus, "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality.  The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Board of County Comm'rs*, 520 U.S. at 404.  To then prevail on a § 1983 claim against the District, Mr. Ashford "must show a course deliberately pursued by the city, 'as opposed to an action taken unilaterally by a nonpolicymaking municipal employee,' . . . and 'an affirmative link between the [city's] policy and the particular constitutional violation alleged.'" *Carter*, 795 F.2d at 122 (quoting *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985)).

       Mr. Ashford asserts without any supporting facts that "pressures to alleviate overcrowding" gave Ms. Britton "every incentive to have separation orders omitted []from inmates['] files in order to effect an efficient and expeditious transfer of prisoners to . . . contract facilities."  Pl.'s Opp. at 11.  Ms. Britton avers that the Department of Corrections "has never had an actual or implied policy of withholding information relating to an inmate from the institutions accepting transfer of an inmate pursuant to the ICC" and would have no incentive to withhold such information.  Decl. of Patricia Britton, Def.'s Ex. 4.  Mr. Ashford has not proffered any contrary evidence, such as documentation of similar situations from which it may be reasonably inferred that the District's failure to convey separation orders to the transferee correctional institutions was "so

widespread as to have the force of law," *Brown*, 520 U.S. at 404, or to constitute "a well-settled municipal custom," *Triplett*, 108 F.3d at 1453. Nor has he presented any evidence to counter Ms. Britton's declaration contradicting the accusations against her personally. *See Ashford*, 306 F. Supp. 2d at 15 ("Mr. Ashford will ultimately need to produce evidence in support of deliberate indifference claim against Ms. Britton"). At best, the record establishes that the 1985 separation orders disappeared from Mr. Ashford's institutional file at some unknown point while he was in D.C. custody and were omitted from his transfer packet prepared in 1997, so that they were unknown to BOP when he was attacked in 2001 by inmates Mowatt and Bundy, with whom Mr. Ashford had had no prior dealings. These facts, even if proven, cannot reasonably support a finding against the District of Columbia for the Eighth Amendment violation alleged here.[4] "[N]either negligence nor vicarious liability imputes deliberate indifference." *Graham*, 880 F.2d at 1421.

Mr. Ashford has not sustained his burden in opposing the summary judgment motion by setting forth facts that present a genuine issue for trial with respect to the federal claim against the District of Columbia or Ms. Britton. Accordingly, the defendants' motion for summary judgment on the § 1983 claim will be granted.

**B. The Negligence Claim**

To prevail on a negligence claim under District of Columbia law, Mr. Ashford must show (1) that the defendants had "a duty . . . to conform to a certain standard of care," (2) that defendants breached that duty, and (3) that he suffered "an injury [that was] proximately caused by

---

[4] Mr. Ashford's claim of deliberate indifference is weakened by a letter dated April 29, 1997, from the Department of Corrections to the Bureau of Prisons "requesting special consideration for inmate Ashford to serve the remainder of his sentence in [the BOP]" because of the circumstances surrounding his assistance with the prosecution of another inmate unrelated to this case. Def.'s Ex. 2.

the defendant's breach." *Romero v. Nat'l Rifle Ass'n of Am., Inc.*, 749 F.2d 77, 79 (D.C. Cir. 1984) (citing *O'Neil v. Bergan*, 452 A.2d 337, 341 (D.C. 1982)). "[P]enal authorities are under a duty to protect and safeguard the prisoners entrusted to their custody." *Haith v. District of Columbia*, 526 A.2d 17, 19 (D.C. 1987). Because of the inherent dangers of prison environments, however, "the District is not *ipso facto* liable for [a prisoner's] injuries." *Id*.

The defendants assert that Mr. Ashford cannot prove his negligence claim because he has not named an expert or submitted an expert report to establish the standard of care from which they are supposed to have deviated. *See District of Columbia v. Moreno*, 647 A.2d 396, 399 (D.C. 1994) ("'[W]hether prison officials acted reasonably to secure the safety of an inmate is not [a question] within the realm of the everyday experiences of a lay person.'") (quoting *Hughes v. District of Columbia*, 425 A.2d 1299, 1303 (D.C. 1981)); *Clark v. District of Columbia*, 708 A.2d 632, 634 (D.C. 1997) ("We have repeatedly held that the standard of care owed by the District of Columbia to persons in its custody is a matter beyond the ken of the average juror that requires expert testimony.") (citing cases). Because recovery on a negligence claim turns on proof of deviation from a standard of care, "[t]he failure to prove a standard of care is fatal." *Moreno*, 647 A.2d at 399 (citations omitted). Mr. Ashford counters that his failure to name an expert is not fatal "[a]t this stage of the proceedings." Pl.'s Opp. at 15. This assertion, however, misses "[o]ne of the principal purposes of the summary judgment rule . . . to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp.*, 477 U.S. at 323-24. It is at this stage of the proceedings, after the parties have availed themselves of discovery, that each party must show his evidentiary hand.[5]

---

[5] Appreciating the hurdles Mr Ashford faces in prosecuting this case *pro se*, the Court has twice appointed counsel to represent Mr. Ashford. Each appointment concluded with counsel's withdrawal. *See* Dkt. Nos. 37, 52; *see also* Mem. Op. and Order (Dec. 21, 2005) (denying Mr.

Mr. Ashford has not proffered any evidence on "the existence of an element essential to [his] case" — namely, the standard of care — "on which [he] will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. He therefore has failed to create a genuine issue of material fact. *See id*. ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

       The defendants also assert that Mr. Ashford has not established the special duty owed under the circumstances and that he cannot prove causation because the attack by persons with whom Mr. Ashford had no prior history was not reasonably foreseeable. When, as here, the alleged injury is caused by the intervening criminal acts of a third party, "a more heightened showing of foreseeability [is necessary] than would be required if the act were merely negligent." *Workman v. United Methodist Comm. on Relief*, 320 F.3d 259, 262 (D.C. Cir. 2003) (citing *Potts v. District of Columbia*, 697 A.2d 1249, 1252 (D.C. 1997)). The standard for such a showing "is a 'demanding' one, and the proof must be 'precise.'" *Id*. (quoting *Potts*, 697 A.2d at 1252). "Foreseeability cannot be predicated upon 'generic information' such as . . . evidence that the defendant's employees worked in a 'criminally active environment.'" *Id*. (quoting *Clement v. Peoples Drug Store, Inc.*, 634 A.2d 425, 429 (D.C. 1993)) (citation omitted). Although the Court has surmised that Mr. Ashford's incarceration may establish a special relationship between him and the District, *Ashford*, 306 F. Supp. 2d at 15, n.5, thereby making "less important" specific evidence of foreseeability, *Workman*, 320 F.3d at 264, Mr. Ashford still must be able to present some probative evidence from which a reasonable juror may find that the District of Columbia had "an increased awareness of the danger of [the] particular criminal act," *Workman*, 320 F.3d at 262 (quoting *District of Columbia v. Doe*,

---

Ashford's motion for the reappointment of counsel).

524 A.2d 30, 33 (D.C. 1987)). This he cannot do because his only proffered evidence — his hearsay statements that his attackers were acting on behalf of Smith and the two unauthenticated documents purported to be separation orders — is inadmissible at trial.[6]

In the absence of any evidence on the standard of care and any competent evidence tying the defendants' alleged omissions to Mr. Ashford's injuries, the Court finds that Mr. Ashford has not established a genuine issue of material fact with respect to his negligence claim. *See Anderson*, 477 U.S. at 254 (noting that, "in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden" applicable at trial). The defendants therefore are entitled to judgment as a matter of law on this claim.

### IV. CONCLUSION

For the foregoing reasons, the Court will grant the defendants' motion for summary judgment and dismiss the case. A memorializing Order accompanies this Memorandum Opinion.

Date: September 21, 2006                              /s/
                                                     ROSEMARY M. COLLYER
                                                     United States District Judge

---

[6] While, as the nonmoving party, Mr. Ashford need not "produce evidence in a form that would be admissible at trial in order to avoid summary judgment," *Celotex Corp.*, 477 U.S. at 324, he nevertheless must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). "[I]t is from this list [of evidentiary materials] that one would normally expect the nonmoving party to make the showing . . . ." *Id.* (citing Fed. R. Civ. P. 56(c)).